VILLAGE OF FOX POINT, Appellant, vs. PUBLIC SERVICE COMMISSION and another, Respondents.

*December 8, 1942—January 12, 1943.*

*Maxwell H. Herriott* of Milwaukee, for the appellant.

For the respondent Public Service Commission there was a brief by the *Attorney General* and *H. T. Ferguson,* assistant attorney general, and oral argument by *Mr. Ferguson.*

For the respondent city of Milwaukee there was a brief by *Walter J. Mattison,* city attorney, and *Ronold A. Drechsler,* assistant city attorney, and oral argument by *Mr. Drechsler.*

A brief *amicus curiæ* was filed by *John C. Doerfer,* city attorney of West Allis.

FAIRCHILD, J. The demurrer to the complaint was sustained in the circuit court because the facts set forth failed to show that the order of the commission was unlawful with respect to classification, rates of return, or inclusion of a tax equivalent in computing operating expenses. An order of the commission is *prima facie* lawful, and the burden of showing unlawfulness is on the party seeking to set aside the order.

Secs. 196.40 and 196.46, Stats. The trial court was of the opinion that plaintiff's complaint failed in that particular.

Appellant's first point of attack is that the classification into urban and suburban service with a different rate for each is unlawful. The complaint in this case, as in each of the two decided herewith (*post,* pp. 105 and 106), alleges that the classification is based on political boundaries of municipalities. The orders of the commission are incorporated and have been examined in the consideration of this matter to determine the full import of the facts alleged. This study of the orders discloses facts which overcome the seeming admission by the demurrer that the classification of "urban" and "suburban resale and county" services was not based on the cost factors of the service which the Milwaukee utility delivers to the Fox Point utility. The fact that political entities are dealing with each other is not so controlling as to determine classification of service as against the showing that the rates fixed by the said orders of the Public Service Commission are based upon cost factors of the service.

Classification of services with a different rate for each class is warranted only if the services are in fact different. Sec. 196.02 (2), Stats., provides that the commission shall classify the service of a utility taking into account "the quantity used, the time when used, the purpose for which used, and any other reasonable consideration." One of the most important considerations is the comparative costs of the services. The underlying question, therefore, is whether the service rendered to the Fox Point utility and the other suburbs placed in the same class is shown to be different from the service rendered to the consumers within the city of Milwaukee.

The commission found and the complaint alleges that the peak demands made upon the utility by the service furnished to the villages differed in amount from the peak demand made by the service furnished within the city and that there was also a difference in the distance which the water had to travel

to serve the villages as compared with the average distance within the city. However, there was also a difference in these respects between the various suburbs, and the commission stated that it gave these factors but little weight in arriving at the classification. A large part of the cost of constructing the plant of the utility came from special assessments within the city of Milwaukee known as "customer contributions." The utility is not to earn on these exactions but the contributors might properly have the benefit thereof. None of these were paid by the suburbs. However, the utility and the commission seem to have agreed to disregard this factor.

Another difference sustaining the two rates is that the suburban rate includes the cost of fire-protection service while the urban rate does not. Within the city of Milwaukee the cost of fire protection is paid by the taxpayers through the city and is not paid by the consumers, the retail customers of the utility. Fire protection is an expensive service rendered by the utility, because it involves having an adequate supply of water ready at all times regardless of whether it is actually used. The utility decided, as it might properly do, to collect its expense of this sort from appellant by including a charge in the general rate. The city of Milwaukee cannot tax the suburb or its inhabitants as it does the taxpayers within its limits to pay for this service.

Finally, the complaint shows that the service rendered to the suburb was wholesale while that rendered to the urban consumers was retail. Appellant itself is a utility, buying water for resale; it owns its own distribution system. This purchase of water for resale may be used as a proper factor to consider in classifying service. Sec. 196.02 (2), Stats.

The commission found that the service to the appellant was different from that rendered to urban consumers. The orders indicate that it considered cost factors. So far as the record before us discloses, the commission acted within its authority and upon competent evidence in making this classification of service. Once it is established that the services are different, a

difference in the rates for each is immaterial so far as lawfulness is concerned. It may be of importance in the question of reasonableness, but that is not before us now. Neither does a difference in the rate of return accorded the utility by the two different rates affect the lawfulness of the rate charged appellant where standing by itself there is no question of unreasonableness. The rates charged appellant give the utility a four per cent return on its investment, although a rate of five and one-half per cent would be reasonable. No right of appellant is invaded by the utility waiving part of its return from its urban customers. The rates, tolls, and charges are required to conform to a proper classification when made. If the service rendered to the Fox Point utility is in some fair and reasonable sense distinct or different from the service rendered to urban users, then conforming the schedule of rates to this classification was warranted. When the classification is justified, the question of discrimination is confined to members of the class, to those who are receiving and paying for a like service. There is to be no gain of one of a class at the expense of another of the same class. The order sustaining the demurrer on the point of classification must be upheld. Since we have concluded that the two services are in fact dissimilar, there is no need to consider what weight under other circumstances might be given to the location of the consumer or the relationships of the different consumers to the utility or the effect of sec. 66.06 (14) (a) 6, Stats., which provides that rates for service outside the city limits "except as to water furnished directly to county or other municipal properties, shall not be less than one quarter more than those charged to the inhabitants of the city for like use of water."

The final contention of the appellant is that the commission improperly included a $550,000 tax equivalent in computing the operating expenses of the utility in deciding the amount the utility could fairly earn, and that this makes the order unlawful. In estimating a municipally owned water utility's operating expenses for rate-making purposes, an allowance

for local taxes was made in *Re Edgerton,* P. U. R. 1918B, 724. This practise has been followed ever since. *Re City of Milwaukee,* P. U. R. 1927B, 229, 241. In 1937 it received the sanction of the legislature when it amended sec. 66.06 (11) (c), Stats., to include among the valid expenses of a municipally owned utility, which is tax exempt, local and school-tax equivalents. Ch. 100, Laws of 1937. The commission referring to this legislation says:

"Until 1937 the statutes did not require municipally owned utilities to record taxes on their books. However, the commission, through prescribing a uniform system of accounts, did require tax expense to be shown. This was done in order to have the accounts show more accurately the full costs of operation and to facilitate cost comparisons with utilities legally subject to taxation."

Although the municipally owned utility is tax exempt, it in reality does carry the burden and under ch. 100, Laws of 1937, it must account to the municipality. The legislature authorized an inclusion of a tax equivalent as an operating expense for the purpose of fixing rates in accordance with the accounting practice followed for many years, and it is considered that the power so exercised is lawful. *Milwaukee E. R. & L. Co. v. Railroad Comm.* 153 Wis. 592, 142 N. W. 491.

*By the Court.*—Order affirmed.

BARLOW, J., took no part.